Filed 1/9/26  P. v. Johnson CA4/1
Review denied 5/13/26; reposted with Supreme Court order and statement

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAMAL HUSSEIN JOHNSON,<br><br>    Defendant and Appellant. | D082203<br><br><br>(Super. Ct. No. CR38392) |

APPEAL from an order of the Superior Court of Riverside County, Matthew C. Perantoni, Judge.  Affirmed.

Cliff Gardner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Michael Dolida, Deputy Attorneys General, for Plaintiff and Respondent.

Carlos Montes Ortega was murdered by repeated blows to his head with a baseball bat during a robbery.  Although then-17-year-old Jamal

Hussein Johnson was not the killer, he was seen hitting Ortega with his hands while his accomplice wielded the baseball bat. Johnson, however, claims he told the killer to stop, just as he informed the police after his arrest.

A jury convicted Johnson of first degree felony murder (Pen. Code § 187, subd. (a); count 1) and robbery (§ 211; count 2). The jury found Johnson did not personally use a deadly and dangerous weapon in the commission of either offense. Johnson was sentenced to 25 years to life in prison with the possibility of parole.

Years later, Johnson petitioned to vacate his murder conviction and to be resentenced under what is now Penal Code section 1172.6, arguing he could not presently be convicted of murder based on legislative changes to our state's murder laws. After an evidentiary hearing, the trial court denied the petition. It found the People had proved beyond a reasonable doubt that Johnson (1) was a major participant in the underlying robbery and (2) acted with reckless indifference to human life; thus, he was still guilty under the amended murder laws. In so finding, the court discredited Johnson's testimony that he told the killer to stop and instead credited evidence that Johnson actively participated in the beating.

On appeal from the denial of his section 1172.6 resentencing petition, Johnson challenged the court's finding he acted with reckless indifference to human life. We concluded substantial evidence supported the court's finding and affirmed. (*People v. Johnson* (Dec. 8, 2023, D082203) [nonpub. opn.].) The Supreme Court granted review and deferred further action pending its disposition of a related issue in *People v. Emanuel*, S280551.

In *People v. Emanuel* (2025) 17 Cal.5th 867, the Supreme Court found insufficient evidence to support a factual finding that the petitioner acted

2

with reckless indifference to human life.  (*Id.* at pp. 885-895.)  The Supreme Court recently vacated our earlier decision and transferred the present case back to this court for reconsideration in light of *Emanuel*.

After considering *Emanuel*, which differs materially from the present case—particularly, the trial court's credibility findings against Johnson and in favor of another witness regarding Johnson's participation in the beating and whether he told the killer to stop—we again affirm.

## I.

## A.

One evening in October 1990, 17-year-old Johnson walked down a street by an apartment complex with his 13-year-old girlfriend and another minor, Ana Al-Rad Levi Guinn.  Guinn carried a baseball bat.

They encountered Ortega as he was leaving the apartment mailboxes. As Ortega walked toward them, Guinn asked Johnson if he "'want[ed] to jack this dude.'"  "To jack" someone means to take the person's money.  In a "snap decision," Johnson agreed.

Guinn demanded money from Ortega.  In response, Ortega ran away. Guinn chased him, and Johnson followed.

Guinn caught up to Ortega and struck him in the head with the baseball bat.  Ortega fell to the ground.  Guinn continued to beat Ortega's head with the baseball bat, dealing at least four and up to seven more blows.

As Guinn beat Ortega, Johnson was "[i]mmediately close" and—according to a witness—"hitting [Ortega] with his hands."  A bystander who overheard, but did not see, the beating heard an unidentified male voice say, "'Stop.  Are you crazy?'"

3

Eventually, someone pushed Guinn away and "grabbed" Johnson. Just before, Johnson took Ortega's wallet "from off the ground" beside the beaten Ortega and pocketed two dollars.

Johnson never tried to help Ortega or call for medical aid, even after the beating stopped. Instead, he ran.

B.

At the time of Johnson's conviction, a defendant could be found guilty of murder under the felony-murder rule if someone was killed during a robbery in which the defendant participated. (*People v. Strong* (2022) 13 Cal.5th 698, 704.) Liability could attach without any showing of malice aforethought and even if the defendant was not the actual killer. (*Ibid.*)

Effective 2019, the Legislature reformed the state's homicide law and "significantly limited the scope of the felony-murder rule." (*Strong*, 13 Cal.5th at pp. 707-708.) As amended, the law now limits felony-murder liability to actual killers and those who either (1) with the intent to kill, aided or abetted the actual killer in the commission of a first degree murder or (2) were a major participant in the underlying felony and acted with reckless indifference to human life. (§ 189(e).)

The Legislature created a procedure, now codified in section 1172.6, that allows those convicted under the old felony-murder rule to seek retroactive relief under the amended murder laws. (Stats. 2018, ch. 1015, § 4.) If the petitioner states a prima facie case for relief, the court must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6(c), (d)(1).) At the hearing, the prosecution bears the burden to prove, beyond a reasonable doubt, that the petitioner is guilty of murder under the amended murder laws. (*Id.*, subd. (d)(3).) The court "may consider evidence previously admitted at any prior hearing or trial that is admissible under current law"

4

as well as any new evidence offered by the parties. (*Ibid.*) "The court may also consider the procedural history of the case recited in any prior appellate opinion." (*Ibid.*) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid.*)

## C.

Following the amendments to the murder laws, Johnson petitioned for resentencing. The court issued an order to show cause and set the matter for an evidentiary hearing. In preparation, the court reviewed the parties' filings and the case file.

At the evidentiary hearing, Johnson testified, but the parties otherwise relied on the prior trial record. Johnson testified that he told Guinn to "'[s]top hitting [Ortega] before you kill him. You tripping.'" According to Johnson, during an interview after his arrest, he informed a police officer that he told Guinn to stop hitting Ortega.[1]

---

[1] Although Johnson testified at the section 1172.6 evidentiary hearing about informing the police that he told Guinn to stop during a post-arrest interview, he did not include a copy of that interview transcript in the record provided to the trial court on the resentencing petition. Indeed, Johnson's counsel did not try to obtain a copy of the transcript, which had been an exhibit in Johnson's trial, until after the Supreme Court granted review of our earlier decision. Now, Johnson asks us to take judicial notice of the interview transcript. We decline to do so. Johnson seeks to introduce this document to "confirm" his hearing testimony and to "undercut[]" the trial court's conclusion he participated in the beating. But to use the document in this manner would exceed our role on review. "We resolve neither credibility issues nor evidentiary conflicts," as they are the "exclusive province" of the trial judge. (*People v. Maury* (2003) 30 Cal.4th 342, 403.) We thus deny Johnson's request for judicial notice.

Johnson acknowledged a witness testified at trial that he hit Ortega but claimed the witness was "not being truthful." Johnson denied committing any violence against Ortega.

After the hearing, the court took the matter under submission so it could "take a further look" at an exhibit and some transcripts of trial testimony that it had "already reviewed."

At a subsequent hearing, the court denied Johnson's petition after finding, beyond a reasonable doubt, that Johnson was a major participant who acted with reckless indifference to Ortega's life, which made him ineligible for resentencing. Defense counsel had conceded Johnson was a major participant in the robbery, so the court's analysis focused on its finding that Johnson acted with reckless indifference to human life. In support, the court found Johnson "actively participated in beating" Ortega. Although Johnson was only 17 years old at the time, the court said, "surely he had to know being struck in the head with a [baseball] bat could cause death." The court discredited Johnson's testimony about telling Guinn to stop as "self-serving statements, really unsupported by the bulk of the evidence and generally not credible."

## II.

Johnson argues the People failed to prove beyond a reasonable doubt that he acted with reckless indifference to human life. We conclude substantial evidence supported the court's finding to the contrary.

We review the denial of Johnson's section 1172.6 petition, which followed an evidentiary hearing, for substantial evidence. (*Emanuel*, 17 Cal.5th at p. 885.) Accordingly, we examine the entire record in the light most favorable to the prosecution to determine if a rational factfinder could find Johnson guilty beyond a reasonable doubt. (*People v. Zamudio* (2008)

6

43 Cal.4th 327, 357.) Substantial evidence is reasonable, credible evidence of solid value, even if circumstantial. (*Ibid.*) On appeal, we "must accept logical inferences that the [factfinder] might have drawn from the circumstantial evidence." (*Maury* 30 Cal.4th at p. 396.) "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify" reversal. (*Id.* at p. 403.) We will affirm the order unless "upon no hypothesis whatever is there sufficient substantial evidence to support it." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

Reckless indifference to human life "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of [the defendant's] actions." (*People v. Clark* (2016) 63 Cal.4th 522, 617.) Reckless indifference has both subjective and objective elements. (*In re Scoggins* (2020) 9 Cal.5th 667, 677.) The subjective element is the defendant's awareness of and willing involvement in the violent manner of the offense with a conscious disregard of "'the significant risk of death [the defendant's] actions create.'" (*Ibid.*) The objective element considers if defendant's actions "'involved a gross deviation from the standard of conduct that a law-abiding person in the [defendant's] situation would observe.'" (*Clark*, at p. 617.)

Determining whether a defendant acted with reckless indifference to human life is "a fact-intensive, individualized inquiry." (*Scoggins*, 9 Cal.5th at p. 683.) The following non-exclusive factors are relevant to whether a defendant acted with reckless indifference to human life:

- knowledge or use of weapons;
- physical presence at the scene and opportunity to restrain the killer or aid the victim;
- duration of the crime;

7

- knowledge of the accomplice's propensity to kill;
- efforts to minimize the risk of violence during the felony; and
- youth.

(*Clark*, 63 Cal.4th at pp. 618-623; *People v. Keel* (2022) 84 Cal.App.5th 546, 558-559 [youth factor].)  No single factor is necessary, nor is any one necessarily sufficient.  (*Clark*, at p. 618.)  Instead, we consider the totality of the circumstances.  (*Scoggins*, at p. 677.)  Courts "should take care to consider the presence or absence of evidence relating to each relevant factor on its own merits before considering the evidence in its totality."  (*Emanuel*, 17 Cal.5th at p. 888.)

## A.

After we issued our initial decision affirming the denial of Johnson's petition for resentencing, the Supreme Court issued *Emanuel,* which applied the *Clark* factors in the context of a felony-murder resentencing proceeding.

In *Emanuel*, the petitioner and a companion arranged to buy drugs from a drug dealer out of the dealer's truck one afternoon near a public park. (*Emanuel*, 17 Cal.5th at pp. 876-877.)  The dealer would not hand over the drugs, so the petitioner began walking away and told his companion, "'let's go.'" (*Id.* at pp. 878-879.)  The companion, however, stayed behind, tried to rob the dealer of his drugs, and hit the dealer on the head with a gun.  (*Id.* at pp. 878-879.)  When the dealer fought back, the companion aimed his gun at the dealer's leg.  (*Ibid.*)  But the dealer hit the companion's hand, which altered the gun's trajectory and caused the companion to fatally shoot the dealer in the neck.  (*Id.* at pp. 877-878.)

On these facts, *Emanuel* held insufficient evidence existed to support finding the petitioner harbored a reckless indifference to human life. (*Emanuel,* 17 Cal.5th at p. 875.)  The evidence showed only that the

8

petitioner "set out to commit a robbery in a public place in the middle of the afternoon"; the petitioner was unarmed; he did not know his companion had a gun; the crime "unfolded without a prolonged period of restraint"; and, when met with unexpected resistance, the petitioner tried to convince his companion to leave and "began to walk away." (*Id.* at pp. 895-896.) Although the petitioner was present at the crime scene, he tried to "act as a restraining influence" by advocating to leave and walking away from the dealer's truck. (*Id.* at p. 891.) Such actions provided "crucial insight" into the petitioner's state of mind; "[w]hen met with resistance, [the petitioner] abandoned the plan rather than resort to greater violence." (*Ibid.*) His failure to intervene after his companion pulled out a gun did not support a reckless indifference finding, as the violence unfolded quickly and his companion's intent to use lethal force was not immediately clear. (*Id.* at pp. 889-892.)

B.

We now apply the factors to the present case and address them from weakest to strongest in terms of showing reckless indifference to human life.

1.

Johnson's youth, though somewhat mitigating, is not dispositive.

Johnson turned seventeen shortly before the incident. "A juvenile's immaturity and failure to appreciate the risks and consequences of [the juvenile's] actions bear directly" on our analysis. (*People v. Ramirez* (2021) 71 Cal.App.5th 970, 991.)

In *Ramirez*, the evidence indicated peer pressure influenced the defendant, who feared he would be killed if he did not help with the felony. (*Ramirez,* 71 Cal.App.5th at p. 991.) In addition, "age may well have affected his calculation of the risk of death posed by" the situation. (*Ibid.*)

Here, in contrast, no evidence suggests Johnson felt pressured to agree to rob Ortega. As for his ability to appreciate risks and consequences, the court found that, even at Johnson's age, "surely he had to know being struck in the head with a [baseball] bat could cause death." Although youth "can distort risk calculations," it "cannot overwhelm all other factors." (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 595.)

Thus, while Johnson's youth is relevant to his mental state, as Johnson concedes, it does not preclude finding that he acted with reckless indifference to human life.

2.

Johnson's knowledge or use of weapons does not show reckless indifference to human life.

Johnson saw Guinn holding the baseball bat when he agreed to rob Ortega. But if the "mere fact of a defendant's awareness that a gun will be used in the felony is not sufficient to establish reckless indifference to human life," (*Clark*, 63 Cal.4th at p. 618), Johnson's awareness of a baseball bat is even less so.

3.

Johnson's effort to minimize the risk of violence at the planning stage is similarly neutral.

While in *Emanuel* the petitioner and his companion planned to commit an unarmed robbery of a drug dealer at a public park in the afternoon, which reflected a "far less grave" objective risk of violence (*Emanuel*, 17 Cal.5th at p. 889), the record here shows no real preplanning. Johnson and Guinn came across Ortega by happenstance one evening and, in a "snap decision," Johnson agreed to Guinn's proposal to rob him. The robbery began immediately after.

10

Accordingly, as the People concede, "this factor does not militate in favor of finding reckless indifference."

4.

The duration of the crime is also a neutral factor.

"A lengthy interaction between perpetrators and victims of a felony may increase the risk of resistance, conflict, and violence." (*Emanuel*, 17 Cal.5th at p. 886.) Here, the entire encounter was brief, lasting somewhere between less than one minute and a few minutes. We agree with Johnson that this brief duration "did nothing to heighten the risk of violence" beyond that inherent in any robbery.

5.

Johnson's knowledge of his accomplice's propensity to kill is a close-to-neutral factor but slightly supports the trial court's finding of reckless indifference to human life.

Knowledge of an accomplice's propensity to kill "may be evident before the felony." (*Clark*, 63 Cal.4th at p. 621.) If the defendant is "keenly aware" that an accomplice is "both explosively violent and capable of committing sudden acts of violence," this factor can be satisfied without proof that the accomplice is a "known killer." (*People v. Montanez* (2023) 91 Cal.App.5th 245, 272-273, 283-284.)

Here, the record contains no evidence Guinn had violent tendencies or Johnson was aware of any beforehand. Guinn carrying around a baseball bat, without more, is not enough. While Guinn reportedly said he "wanted to kill someone" that day, the record is unclear as to whether Johnson heard this statement. Thus, Johnson does not appear to have known in advance of Guinn's propensity to kill.

11

Even so, Johnson likely developed this knowledge after Guinn knocked Ortega to the ground and continued to strike him in the head with the baseball bat. Knowledge of an accomplice's propensity to kill may arise *during* the felony. (*Clark*, 63 Cal.4th at p. 621.) As crimes unfold, "warning signs that the crimes posed a serious risk of danger to the victims" can "accumulate[]." (*Montanez*, 91 Cal.App.5th at p. 273.) How long the felony lasts affects the degree to which a defendant can "observe additional facts showing the crimes posed a serious risk of danger." (*Id.* at pp. 273-274.) Although the events here were brief, awareness of the risk to human life can develop over a short period. For example, in *In re Loza*, the killer demanded money from the victim and counted down from five while threatening to shoot. (*In re Loza* (2017) 10 Cal.App.5th 38, 53.) While only seconds long, that period gave the defendant "time to observe and react before the murder." (*Ibid.*)

Johnson argues *Loza* is distinguishable because the killer had told the defendant that he had just shot someone in the head and the defendant still gave him a gun. But the court's analysis on this factor did not turn on the defendant's subjective knowledge. Rather, *Loza* concluded "any objective observer would have appreciated the grave risk to life" during the countdown. (*Loza*, 10 Cal.App.5th at p. 53.)

Similarly, here, Johnson objectively should have understood the grave risk to life after Guinn's first blow forced Ortega into a vulnerable position on the ground and Johnson saw Guinn continue to deliver blow after blow to Ortega's head. Indeed, Johnson acknowledged in his original opening brief that, "as the robbery progressed, it became clear that Guinn was willing to use force." Guinn struck Ortega's head *at least* four times. All but the first strike occurred while Ortega lay prone on the ground. The repeated blows

12

after Ortega fell to the ground gave Johnson time, if brief, to (1) realize Guinn's beating could be fatal and (2) decide how to react. Because of the short duration, however, we give this factor little weight.

6.

Johnson's presence at the scene and opportunity to restrain the killer or aid the victim support finding Johnson acted with reckless indifference to human life.

A defendant's presence provides an opportunity to act as a restraining influence on accomplices such that "'[i]f the defendant fails to act as a restraining influence, then the defendant is arguably more at fault for the resulting murders.'" (*Clark*, 63 Cal.4th at p. 619.) The focus for this factor "should not be on the ultimate *efficacy* of [the defendant's] actions, but on what [the defendant's] actions reveal about [the defendant's] mental state." (*Emanuel*, 17 Cal.5th at p. 891.)

Here, Johnson admits he chased Ortega and was "[i]mmediately close" during the beating. And Johnson concedes he did not try to physically stop Guinn or render aid to Ortega.

Most damning is the witness testimony that Johnson attacked Ortega with his hands while Guinn wielded the baseball bat. Far from acting as a restraining influence, Johnson chose violence. In denying the resentencing petition, the trial court credited this testimony, noting Johnson "actively participated" in the beating. It found the evidence "suggests as Mr. Ortega tried to defend or shield himself with being hit from the baseball bat, [Johnson] was hitting him with his fists," thus affecting Ortega's "ability . . . to defend himself." The witness's testimony is sufficient to support this finding. "Except where additional evidence is required by statute, the direct evidence of one witness who is entitled to full credit is sufficient for proof of

13

any fact." (Evid. Code, § 411; *People v. Young* (2005) 34 Cal.4th 1149, 1181.) Although Johnson tries to cast doubt on the witness's testimony based on her angle of view and purported drug use, "even testimony [that] is subject to justifiable suspicion do[es] not justify" reversal. (*Maury*, 30 Cal.4th at p. 403.) Besides, Johnson himself testified that someone "grabbed [him] on up" after pushing Guinn away from Ortega. A reasonable factfinder could infer the intervenor did so because Johnson, too, was involved in the beating. At the very least, the intervenor felt compelled to separate Johnson from Ortega.

Consequently, Johnson's actions, as found by the trial court and supported by the record, stand in stark contrast to the petitioner's in *Emanuel*. Rather than encourage his accomplice to abandon the robbery when met with resistance, as in *Emanuel*, 17 Cal.5th at p. 891, Johnson chose to contribute to the violence against Ortega.

Johnson relies heavily on his testimony—deemed "generally not credible" by the court—that he told Guinn to stop. Johnson contends the court's adverse credibility finding "cannot be squared" with another witness's testimony about hearing an unidentified male tell Guinn to stop. Yet that witness, who heard but did not see the events, could not identify the speaker. And as Johnson acknowledges, "'[s]everal people'" were seen standing nearby during Ortega's beating. As a result, the unknown voice could have come from one of those other bystanders and was not definitively Johnson's.

"The findings of the trial court upon conflicting evidence are conclusive." (*Emanuel*, 17 Cal.5th at p. 885, fn. 7.) The trial court possesses "wide latitude to believe or disbelieve witnesses, or even specific portions of their testimony, as it sees fit." (*In re Lopez* (2023) 14 Cal.5th 562, 591.) We review the record for substantial evidence; this appeal is not an opportunity

14

for Johnson to relitigate factual disputes. "The fact that [Johnson] disagree[s] with the conclusions and inferences the superior court drew from the evidence does not mean the court" erred. (*People v. Saibu* (2022) 81 Cal.App.5th 709, 744.) The court's findings (1) crediting witness testimony about Johnson hitting Ortega and (2) discrediting Johnson's testimony about telling Guinn to stop, just as he told the police after his arrest, are thus dispositive on this factor.

\*       \*       \*

Under the totality of the circumstances and viewing the record in the light most favorable to the People, we conclude substantial evidence supports the court's finding that Johnson acted with reckless indifference to human life.

### III.

We affirm the order denying Johnson's section 1172.6 petition for resentencing.

CASTILLO, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.

Filed 5/13/26

Court of Appeal, Fourth Appellate District, Division One - No. D082203

**S295238**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

_____

THE PEOPLE, Plaintiff and Respondent,

v.

JAMAL HUSSEIN JOHNSON, Defendant and Appellant.

_____

The request for judicial notice is denied.
The petition for review is denied.

(See Concurring Statement by Justice Evans.)

_____/s/_____
*Chief Justice*

PEOPLE v. JOHNSON

S295238

Concurring Statement by Justice Evans

Then 17-year-old defendant Jamal Hussein Johnson, while walking with his girlfriend, made a "snap decision" to assist codefendant Ana Al-Rad Levi Guinn, also a minor, in the robbery of a stranger, Carlos Montes Ortega. Guinn was armed with a baseball bat. When Ortega ran from the two teenagers, both minors pursued him and, after catching Ortega, Guinn repeatedly struck Ortega in the head with the bat. After the assault concluded, Johnson took two dollars from Ortega's wallet and fled. Ortega died from his injuries. Johnson was tried and convicted of first degree murder under a felony murder theory.

Effective 2019, the Legislature reformed the state's homicide law and "significantly limited the scope of the felony-murder rule." (*People v. Strong* (2022) 13 Cal.5th 698, 707; see also Senate Bill No. 1437 (2017–2018 Reg. Sess.).) Johnson filed a petition for resentencing, arguing he was no longer liable for murder under the narrower felony-murder rule.[1] The trial court denied Johnson's petition, finding that Johnson was guilty even under the more-circumscribed felony murder rule. It concluded that he was, admittedly, a major participant in the felony and

_____

[1] Johnson was paroled prior to filing his petition, but seeks to vacate his murder conviction.

1

that his conduct exhibited a reckless indifference to human life. After the Court of Appeal affirmed the sufficiency of the trial court's finding on appeal, we decided *People v. Emanuel* (2025) 17 Cal.5th 867, 875 (*Emanuel*). We granted Johnson's petition and transferred it to the Court of Appeal to reconsider in light of *Emanuel*. The Court of Appeal again affirmed. (*People v. Johnson* (Jan. 9, 2026, D082203) [nonpub. opn.].)

As we noted in *Emanuel*, Courts of Appeal have recognized that " 'a defendant's youth is a relevant factor in determining whether the defendant acted with reckless indifference to human life.' " (*Emanuel, supra*, 17 Cal.5th at p. 885, fn. 6, quoting *In re Moore* (2021) 68 Cal.App.5th 434, 454 and citing *People v. Ramirez* (2021) 71 Cal.App.5th 970, 990–991.)

This is a case in which proper consideration of youth might have affected the determination that Johnson acted with reckless indifference to human life. No one disputes that Johnson was not the perpetrator of the murder. And witnesses disagreed as to whether Johnson, who was unarmed, even participated in the unplanned assault of Ortega. Benita Hill, whom Johnson had recently begun dating, indicated that Johnson did not hit Ortega. Valerine Warren, whose view from an apartment down the street was partially obstructed and who may have been intoxicated at the time of the murder, claimed that she saw Johnson strike Ortega with his fists.[2] Regardless of whether Johnson struck Ortega at some point, neither party contests that his decision to assist in the robbery was made

---

[2]     The trial court's brief oral decision seems, implicitly, to have credited Warren's account and discredited Hill's account, but it provides no explanation for this tacit resolution of conflicting testimony.

without reflection and without prior knowledge of Guinn's violent propensities. And events transpired quickly: From Johnson's decision to rob Ortega to fleeing with the two dollars lasted under a minute; the assault itself lasted only about twenty seconds.

The Court of Appeal, in applying the factors identified in in *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) and refined in *Emanuel*, found that most of them did not support a finding of reckless indifference to human life. With respect to Johnson's knowledge or use of weapons (*Clark*, at pp. 618–619; see also *Emanuel*, *supra*, 17 Cal.5th at p. 885), the appellate court found that Guinn's possession of a baseball bat, a potentially nonlethal weapon, "does not show reckless indifference to human life." The court also found that there was "no real preplanning" of this crime and thus accepted the People's concession that Johnson's efforts during the planning stage to minimize the risk of violence also did not militate in favor of a finding of reckless indifference. (See *Clark*, at pp. 621–622; see also *Emanuel*, at p. 887.) The duration of the felony (*Clark*, at pp. 620–621; see also *Emanuel*, *supra*, 17 Cal.5th at p. 886), under a minute here, " 'did nothing to heighten the risk of violence.' " With respect to Johnson's knowledge of his accomplice's likelihood of killing (*Clark*, at p. 621; see also *Emanuel*, *supra*, 17 Cal.5th at p. 885), the Court of Appeal found that the record "contains no evidence Guinn had violent tendencies or Johnson was aware of any beforehand." However, it nonetheless found that this factor "slightly supports" the trial court's finding because Johnson "likely developed this knowledge" after Guinn began striking Ortega. It reasoned that "[w]hile only seconds long, that period gave the defendant 'time to observe and react before the murder.' " Only the *Clark* factor of Johnson's presence at the scene and ability

to restrain the killer or render aid clearly supported the trial court's finding.

It is against this backdrop that we must, in assessing the sufficiency of the evidence, analyze the factor of youth weighed by the courts below. Appellate cases "have concluded nearly uniformly that a defendant's youth — defined, roughly, as being 25 years of age and younger — is a factor within the totality of circumstances relevant to the requisite mental state for felony murder." (*People v. Pittman* (2023) 96 Cal.App.5th 400, 416 (*Pittman*).) Citing cases from the high court, they have recognized that " ' "[t]ransient rashness," ' " ' " 'impetuosity,' " ' and ' " "failure to appreciate risks and consequences' " ' are hallmarks of an immature brain." (*Id.* at p. 418.) And even when the *Clark* factors "support a finding of reckless indifference for an adult," they may nonetheless "undoubtedly preclude such a finding when viewed from the lens of [a defendant's] youth." (*In re Moore* (2021) 68 Cal.App.5th 434, 454.)

Here, in analyzing Johnson's mens rea, the trial court's only reference to Johnson's youth was to observe that, despite having just turned 17, "surely [Johnson] had to know being struck in the head with a bat could cause death." The Court of Appeal, in turn, echoed the trial court's observation. The Court of Appeal briefly noted that Johnson was not subject to adult coercion, a factor present in some other cases assessing the relevance of youth. (See *People v. Ramirez* (2021) 71 Cal.App.5th 970, 991.) But its sole discussion of the *applicable* features of youth was merely to conclude that while "youth 'can distort risk calculations,' it 'cannot overwhelm all other

4

factors.' " I question whether this analysis accorded appropriate weight to the factor of Johnson's youth.

Youth is not only a factor in assessing reckless indifference to human life, but it may be an "important one, depending on the facts of the case." (*People v. Keel* (2022) 84 Cal.App.5th 546, 558.) The case below, involving a minor's "snap decision" to participate in a robbery which — very quickly and unexpectedly — escalated into a fatal assault, appears to be a prototypical example of the hallmark features of youth: Transient rashness, impetuosity, and failure to appreciate risks and consequences. (See *Pittman*, *supra*, 96 Cal.App.5th at p. 418.) Even assuming Johnson was involved in the assault by striking Ortega, it is far from clear that his brief participation demonstrated that he knowingly engaged in criminal activities known to carry a grave risk of death, or that he exhibited a willingness to kill (or to assist another in killing) to achieve a distinct aim. (*Emanuel*, *supra*, 17 Cal.5th at p. 883.)

Nevertheless, I concur with today's denial of review. Johnson's petition does not adequately contest the Court of Appeal's assessment of youth to allow this court to elucidate the proper role of youth in whether an individual acted with reckless indifference to life. Moreover, he has been released from custody for the underlying offense. And while the courts below may not have fully accounted for the role of youth in Johnson's conviction, other mechanisms, including possible consideration for a gubernatorial pardon, may allow for proper consideration

of Johnson's youth as it affected his involvement in this ill-considered and tragic crime.


**EVANS, J.**

**We Concur:**

**LIU, J.**
**GROBAN, J.**